OPINION
RAAS, J.:
INTRODUCTION
This case raises two questions: (1) Was the Notice of Employment Appeal timely filed?; and (2) Did the Employment Court properly order discovery on the J.M.’s claim that her dismissal for attendance violations was a pretext for unlawful discrimination on the basis of national origin?
FACTS
On May 10, 2013, J.M. was dismissed from her tribal employment for violating the attendance policies found in TTC 9.10.590(l)(a) (call-ins), 9.10.920(l)(p) (violations of employment rules), and TTC 9.10.920(l)(r) (taking unauthorized or extended breaks). J.M. timely filed a Notice of Employment Appeal and Request for Appeal Hearing; however, when the Employment Court reviewed this Notice it deemed portions of it to be unreadable because the printing was too small to be read. The Employment Court required the ‘Facts’ and ‘Relief Requested’ to be refiled so that these sections were more legible. After some confusion regarding service and deadlines, J.M. filed an expanded and more legible Notice of Employment Appeal on June 21, 2013. Appellant Tribe challenges this June 21, 2013 filing as untimely.
Over a period of several weeks prior to her dismissal, J.M. requested Qualified Medical Leave on the proper forms. None of these requests were granted. Nonetheless. J.M. proceeded to take the leave requested as if leave had been approved. No objections or comments regarding the failure to grant these requests are in the record. J.M. was subsequently terminated for several violations of the attendance policies of the Appellant. In both the ini *460 tial and the expanded Notices of Appeal to the Employment Court, J.M. alleged that her termination for violation of attendance policies was a pretext. She states that after she received her termination notice, a Tulalip Human Resources staffer told her that she would not get a ‘Second Chance Agreement’, see TTC 9.10.910(5), because “she was not Tulalip,” and that she was given a copy of her Oglala Sioux tribal identification card with her termination notice. She claims that these matters show discrimination against her because she was not a Tulalip member.
The Employment Court accepted jurisdiction. It denied a motion to dismiss and permitted discovery to allow J.M. to explore whether her termination for violation of the attendance policies was a pretext for firing her because she was not a member of the Tulalip Tribes, but instead was a member of the federally recognized Oglala Sioux Tribe. J.M. alleges that this would be improper discrimination on the basis of national origin.
DISCUSSION
Standard of Review
Decisions of the Employment Court are to be affirmed unless the decision is “arbitrary, capricious, or unsupported by substantial evidence”. TTC 9.10.950(12). Although this is a standard of review typically applied to administrative rule-making proceedings rather than judicial or quasi-judicial proceedings, this Court has long-considered a ruling based on an error of law to be “arbitrary” for purposes of Employment Court appeals. The Tribes argue that the Employment Court made two errors of law in this case: allowing this appeal to go forward despite a late filing of the Notice of Appeal, and disregarding the unambiguous language of TTC 9.10.940(7)(d) prohibiting appeals from termination of employment due to violation of attendance policies.
Was the Appeal to the Employment Court Timely?
Appellant Tribes grasp a weak straw when they argue that the appeal to the Employment Court was not timely filed. The Employment Court ordered that the portions of the Notice of Appeal be refiled regarding the ‘Facts’ and ‘Relief sections only, and set a date for refiling. It did not reject the Notice of Appeal, nor did it require an entirely new Notice. Instead, noting that his eyesight was not as good as it once was, the Employment Court judge sought a more easily read pleading. J.M. complied with the new schedule set by the Employment Court. Notices of appeal to the Employment Court are made on a form supplied by the Tribes and are usually given employees when an action that the Tribes deem ap-pealable has been taken. The form invites the employee to complete the form by hand writing the grounds for the appeal, as was done here. The Employment Court has the discretion to require more legible pleadings to supplement a difficult to read Notice of Appeal, and doing so does not change the date at which the initial filing was made, so long as the initial filing was accomplished within the time limit of TTC 9.10.950(12). J.M.’s expanded Notice of Appeal filed on June 21, 2013 related back to her initial filing of May 10, 2013, and was therefore timely. The Employment Court had the jurisdiction to consider this appeal.
Did the Employment Court Err When It Ordered Discovery to Allow J.M. to Seek Evidence to Support Her Discrimination Claim?
The Tulalip Tribes’ Human Resources Code prohibits appeal to the Em *461 ployment Court for termination due to violation of attendance policies TTC 9.10.940(7)(d) (“A dismissal notice may be appealed through the appeal process in this chapter; except if dismissed pursuant to attendance policies.”). Appellant Tribes argue that this ordinance is plain on its face and prohibits consideration of J.M.’s claim that her dismissal for violation of attendance policies was a pretext masking unlawful discrimination on the basis of national origin. J.M. agrees that the ordinance is clear, but argues that C.S. v. Tulalip Tribes Housing Dept., 10 NICS APP. 6 (Tulalip Tribal Ct.App.2011) (publication pending) contains an exception to this prohibition when this court declared: “There is no allegation that the attendance charges were a pretext for dismissal on other grounds.” C.S., at 11. J.M. argues that this sentence opens the door to a claim of pretext if the termination was for an improper purpose rather than for violation of attendance policies. She claims that the statement by the Tulalip Human Resources worker about her ‘not being a Tulalip’ and the tender of a copy of her Oglala Sioux enrollment card constitute evidence of unlawful discrimination that are masked by the dismissal for violations of attendance policies.[1] The Employment Court agreed with J.M., and ordered dis-coveiy.
J.M. does not deny that she took medical leave, even though her requests for such leave were not approved. The record does not show that she made any effort to protest or appeal the denial of her requested medical leave, nor is there anything in the record to indicate that she raised her concern about discrimination at any time until after she received the termination notice. Indeed, were the denials based on her status as a non-Tulalip member, the record should have some evidence that she objected to the denials of medical leave. While we are sympathetic to J.M.’s claim, this record is insufficient to affirm the Employment Court’s disregard of the bar against appealing a dismissal for violation of attendance policies. In reversing the Discovery Order of the Employment Court, we do not resolve the question left open in C.S. v. Tulalip Tribes Housing Authority of whether a properly supported claim of unlawful discrimination is sufficient to overcome the prohibition against appealing dismissals for violation of attendance policies.
Conclusion
The Notice of Appeal was timely filed.
The Employment Court’s discovery order is reversed and J.M.’s appeal of her termination for violating attendance policies is barred by TTC 9.10.940(7). Whether a properly supported claim of unlawful discrimination will defeat the bar of appeal from termination for violating attendance *462 policies found in TTC 9.10.940(7) is left for another day.
The Employment Court is reversed on its Order permitting discovery and J.M.’s appeal of her termination is dismissed.
It is so ordered.

. For the purposes of this appeal we assume without deciding that discrimination in favor of Tulalip members and against members of any other federally recognized Indian Tribe could constitute unlawful discrimination on the basis of national origin. But it is by no means clear that the federal anti-discrimination laws considered such intertribal discrimination to be unlawful. For example, 42 U.S.C. § 2000e(b)(l) exempts Indian tribes from the definition of an employer' subject to the Equal Employment Opportunity Act, which in turn would seem to exempt a tribal employer from the prohibitions of the E.E.O.A.; 42 U.S.C. § 2000e-2(i) exempts hiring of Indians rather than non-Indians on or near Indian reservations from the Equal Employment Opportunity Act: and Morton v. Mancari, 417 U.S. 535, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974) upholds the long standing preference for Indian employment in the Indian Health Service. There is no distinction made in the federal law between Indians of different tribes. Tulalip law explicitly embodies preference for Tulalip members in hiring. TTC 9.10.990.